**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rachel Benson, | No. CV-13-2201-PHX-LOA |
|                 Plaintiff, | **ORDER** |
| vs. | |
| Energy Solutions, Inc.; Law Office of James R. Vaughn, P.C.; TRS Financial Corporation; Victor and Jane Doe Gilgan, husband and wife; Robert Conti and Nikal Conti, husband and wife, | |
|                 Defendants. | |

This action comes before the Court on Defendants' Motion to Dismiss the Complaint, pursuant to Rules 12(b)(1), 12(b)(5), and 12(b)(6), Federal Rules of Civil Procedure. (Doc. 22) Defendants move for dismissal of the First Amended Complaint ("FAC") on numerous grounds, including: 1) the District Court of Arizona lacks subject matter jurisdiction over this action due to the *Rooker-Feldman* doctrine; 2) and Plaintiff's claims are barred by the relevant statute of limitations; and 3) the FAC fails to state a plausible claim upon which relief can be granted. (*Id.*) Though Plaintiff has not asked for leave to amend the FAC, Defendants request dismissal with prejudice without leave to amend as any amendment would be futile.

After review of the parties' briefings and relevant authorities, the Court will grant Defendants' motion. The Court will dismiss this action with prejudice as a third amendment would be futile to state a plausible claim. The Court finds it unnecessary to address Defendants' other grounds for dismissal.

## I. Background

This 2013 federal lawsuit arises out of a 2001 debt-collection action brought against Plaintiff in an Arizona justice court, resulting in a default judgment. Years later and twelve months after ESI garnished money in Plaintiff's bank accounts with Bank of America, Plaintiff commenced this federal action, on October 28, 2013, alleging multiple violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*., and the Arizona torts of Conversion and Intentional Infliction of Emotional Distress. (Doc. 1) Because the original Complaint failed to comply with several of the District Court of Arizona's Local Rules, the Court struck the Complaint without prejudice with leave to re-file by November 8, 2013. (Doc. 6)  Plaintiff timely re-filed a nearly identical Complaint, and, on February 24, 2014, filed the verified FAC, adding five new defendants - TRS Financial Corporation; Victor Gilgan and Jane Doe Gilgan, husband and wife; Robert Conti and Nikal Conti, husband and wife. (Docs. 8; 18-2 at 1-20)

### A. The State-Court Action

According to Arizona court documents[1] and undisputed allegations alleged in the FAC, the facts are as follows. On or about July 31, 1997, Plaintiff incurred a debt to Best Buy in the amount of $739.47. (Doc. 18-2, ¶ 13 at 4)  Nearly four years later, on July 30, 2001, Defendant Energy Solutions, Inc. ("ESI"), the assignee of Household Bank ("HSBC"), filed a debt-collection action against Plaintiff in the Scottsdale Justice Court, Maricopa County, Arizona, CV 01-05236 ("the State-court action"). (Doc. 22-2, Exhibit ("Exh.") 2)

---

[1] A district court may properly take judicial notice of any fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201, Fed.R.Evid. When adjudicating a motion to dismiss, a court may take judicial notice of public filings. *In re Silicon Graphics Inc. Sec. Litig*., 183 F.3d 970, 986 (9th Cir. 2002) (superseded by statute on other grounds) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)). Doing so, however, does not convert a motion to dismiss into one for summary judgment. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty*., 547 F.3d 943, 955 (9th Cir. 2008); *MGIC Idem. Corp. v. Weisan*, 803 F.2d 500, 504 (9th Cir. 1986). Thus, publicly-filed documents will be considered by the Court in ruling upon Defendants' dismissal motion.

1    In the State-court complaint, ESI alleged Plaintiff "entered into a contract for payment with
2    assignor of ESI," "defaulted in the payment obligation under the contract," "the principal
3    balance remaining due and unpaid [was] $739.47 plus interest at the rate of 18 per cent from
4    July 31, 1997 until paid[,]" and Plaintiff "failed to pay the indebtedness." (*Id.*, ¶¶ 2-4)  ESI's
5    complaint requested that judgment be entered in the amount of Plaintiff's debt to Best Buy,
6    the accrued interest to date until paid, and ESI be awarded its reasonable attorneys' fees and
7    court costs incurred. (*Id.* at 3)  ESI's counsel in the State-court action was James R. Vaughan,
8    a non-defendant in this federal lawsuit and undisputed principal of Defendant Law Offices
9    of James R. Vaughan, P.C. ("Vaughan"), an alleged professional corporation. (Doc. 18-2,
10   ¶ 6 at 2)

11           Plaintiff admits in the verified FAC that she "does not recall ever being served with
12   a summons and complaint or any other notice from either Defendant." (Docs. 18-2, ¶ 14 at
13   4) The process server's certified Affidavit of Service, however, confirms Plaintiff was
14   personally served with the State-court's summons and complaint at 8:18 p.m. on August 13,
15   2001, at 4140 N. 78th St., #1149, Scottsdale, AZ 85251. (Doc. 22-3, Exh. 2)  When Plaintiff
16   failed to timely answer ESI's complaint, default was entered by the clerk and, more than 10
17   days later, a default judgment was entered on October 31, 2001, in favor of ESI and against
18   Plaintiff. (Doc. 22-1, Exh. 1) The October 31, 2001 judgment was in the amount of "1,943.99
19   plus interest on principal at 18% from October 26, 2001 until Judgment is entered. Interest
20   on the Judgment [shall accrue] at the contract rate at 18% until paid." (*Id.*)  Defendants note
21   that "Plaintiff failed to challenge the final judgment in the justice court, or on appeal in the
22   state courts of Arizona" and Plaintiff does not dispute this representation. (Doc. 22 at 3)

23           Plaintiff's FAC acknowledges that "[o]n or about October 12, 2006, the McDowell
24   Mountain Justice Court renewed Defendants' judgment in the amount of $3,326.08." (Doc.
25   18-2, ¶ 18 at 5) On August 4, 2011, ESI again renewed the judgment for an additional five
26   years in accordance with A.R.S. 12-1613. (*Id.* at 5-6; doc. 18-5, Exh. 5 at 1)

27           According to court records from McDowell Mountain Justice Court, ESI served a writ
28   of garnishment on October 15, 2012,  in case number CV 01-05236, on Bank of America,

1   garnishing $1,596.48 from Plaintiff's bank accounts. (Docs. 22-4, Exh. 4 at 1; 22-5, Exh. 5

2   at 1-4)  On November 19, 2012 and February 6, 2013, ESI subpoenaed documents from Bank

3   of America, seeking information, such as, Plaintiff's bank statements, applications for credit;

4   checking, savings, money market, and brokerage accounts; safe deposit boxes, and

5   guaranteed investment certificates. (Docs. 22-6, Exh. 6 at 1-4; 22-7, Exh. 7 at 1-6) The

6   November 19, 2012 subpoena certifies that ESI mailed a copy to Plaintiff's last known

7   address, which was provided to ESI in Bank of America's October 25, 2012 Answer to Writ

8   of Garnishment. (Doc. 22-6, Exh. 6 at 4) The February 6, 2013 subpoena reflects ESI's

9   counsel mailed a copy to Plaintiff's California counsel, Mark W. Straface. (Doc. 22-7, Exh.

10  7 at 6)  Eight months later, Plaintiff filed this federal lawsuit.

11      **B. The District-Court Allegations**

12      The FAC alleges, or purports to allege, nine causes of action or claims for relief: 1)

13  Declaratory Relief to set aside judgment for lack of standing (Count One[2]); 2) Injunctive

14  Relief for criminal violations – A.R.S. § 32-1055 (Count Two); 3) Violations of the Fair

15  Debt Collection Practices Act (Counts Three, Four and Five); 4) Conversion (Count Six);

16  Injunction for violations of the FDCPA (Count Seven); Equitable Relief for violations of the

17  Federal Trade Commission Act ("FTCA") and FDCPA (Count Eight); and Intentional

18  Inflection of Emotional Distress ("IIED") (Count Nine). (Doc. 18-2) In this federal action,

19  Plaintiff requests judgment be entered against Defendants for, *inter alia*, a judicial

20  declaration pursuant to 28 U.S.C. § 2201(a) that Defendants ESI and Vaughan were not

21  proper parties to the State-court action rendering the State judgment against Plaintiff void

22  *ab initio*; an injunction against Defendants for further criminal violations of A.R.S. § 32-

23  1055; awarding Plaintiff general, special, statutory, and/or punitive damages against

24  Defendants for violating multiple parts of the FDCPA and committing the torts of

25  ――――――――――

26      [2] The Court designates each cause of action as a separate count for ease of reference
    and the Federal Rules of Civil Procedure's preference that each claim be stated in a separate
27  count. *See Bautista v. Los Angeles County*, 216 F.3d 837, 840-41 (9th Cir. 2000) (each claim
    should be "stated in a separate count . . . [because] a separation facilitates the clear
28  presentation of the matters set forth.") (citing, *inter alia*, Fed.R.Civ.P. 10(b)).

Conversion, and IIED; and award Plaintiff her costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3). (*Id.* at 18-19)

Specifically, Count Three alleges that Defendants are "debt collectors" by 15 U.S.C. § 1692a(6) and violated the FDCPA, 15 U.S.C. § 1692d, "by engaging in conduct the natural consequence of which was to harass, oppress, or abuse Plaintiff by" the following:

> A. initiating legal action against Plaintiff without standing;
> B. failing to serve Plaintiff with a summons and complaint;
> C. obtaining a state court judgment without standing;
> D. failing to give Plaintiff notice of the default judgment;
> E. failing to give Plaintiff notice of the judgment renewal in 2006;
> F. failing to give Plaintiff notice of the second judgment renewal in 2011;
> G. failing to give Plaintiff notice of the garnishment;
> H. garnishing Plaintiff's bank without standing;
> I. subpoenaing Plaintiff's bank records on November 15, 2012;
> J. subpoenaing Plaintiff's bank records on February 5, 2013; and
> K. filing the [Beneficial National Bank ("BNB")] cardholder agreement with the court, defendants falsely represented that the [cardholder agreement] permitted the collection of eighteen percent (18%) interest.

(*Id.* at 10-11)

Count Four alleges that Defendants violated the FDCPA, 15 U.S.C. § 1692e(1), by using "false, deceptive and misleading representations" and/or "deceptive means to collect or attempt to collect a debt or to obtain information concerning a consumer by" the following:

> A. initiating legal action against Plaintiff without standing;
> B. failing to serve Plaintiff with a summons and complaint;
> C. obtaining a state court judgment without standing;
> D. failing to give Plaintiff notice of the default judgment;
> E. failing to give Plaintiff notice of the judgment renewal in 2006;
> F. failing to give Plaintiff notice of the second judgment renewal in 2011;
> G. failing to give Plaintiff notice of the garnishment;
> H. garnishing Plaintiff's bank accounts without standing;
> I. subpoenaing Plaintiff's bank records on November 15, 2012;
> J. subpoenaing Plaintiff's bank records on February 5, 2013;
> L. miscalculating the debt by combining pre and post judgment interest and thereafter adding eighteen percent (18%) post judgment to the debt, costs and attorney fees.

(*Id.* at 11-12)

Count Five alleges that Defendants violated the FDCPA, 15 U.S.C. § 1692f, "[b]y engaging in conduct to collect or attempt to collect a debt that was unfair or unconscionable

by" the following:

> A. initiating legal action against Plaintiff without standing;
> B. failing to serve Plaintiff with a summons and complaint;
> C. obtaining a state court judgment without standing;
> D. failing to give Plaintiff notice of the default judgment;
> E. failing to give Plaintiff notice of the judgment renewal in 2006;
> F. failing to give Plaintiff notice of the second judgment renewal in 2011;
> G. failing to give Plaintiff notice of the garnishment;
> H. garnishing Plaintiff's bank accounts without standing;
> I. subpoenaing Plaintiff's bank records on November 15, 2012;
> J. subpoenaing Plaintiff's bank records on February 5, 2013; and
> K. filing the Beneficial National Bank cardholder agreement with the court, defendants falsely represented that the [cardholder agreement] permitted the collection of eighteen percent (18%) interest. Defendants collected unauthorized charges, fees, expenses and eighteen percent (18%) interest, without an agreement. The interest rate alone is well beyond the ten percent (10%) rate set forth in A.R.S. § 44-1201. Even if Plaintiff were to assume without deciding the [cardholder agreement] governs post judgment interest, as Defendants apparently are, the default paragraph contained therein refers to post judgment interest at the statutory rate, not a contract rate. By this misrepresentation Defendants, in the most outrageous way possible used the legal process to artificially increase consumer debt for personal gain. Clearly, the purpose of post-judgment interest cannot be personal profit.

(*Id.* at 13-14)

Count Six, the Conversion count, alleges that by garnishing the $1,546.48 from Plaintiff's bank accounts on or about November 9, 2012, "Defendants converted the monies to their own use when Plaintiff's monies were deposited into Defendant Vaughan's attorney/client trust account." (*Id.*, ¶¶ 55-57 at 15-16) "Defendants lacked standing to file an action against Plaintiff, lacked standing to obtain a default judgment and as such lacked standing to garnish Plaintiff's bank accounts." (*Id.*, ¶ 58 at 16) "The aforementioned acts of Defendants were wilful, wanton, malicious, and oppressive, Defendants' acts were undertaken with the intent to defraud, and justify the awarding of exemplary and punitive damages." (*Id.*, ¶ 58 at 16)

Count Seven alleges that "[u]nder 15 U.S.C. § 1692l[,] a violation of the FDCPA shall be deemed an unfair or deceptive act or practice in violation of the Federal Trade Commission Act['FTCA',]" and requests "a permanent injunction to ensure that Defendants will not continue to violate the FTCA and the FDCPA." (*Id.*, ¶¶ 62-63 at 16-17)

Count Eight, titled "EQUITABLE RELIEF FOR VIOLATIONS OF THE FTCA

AND THE FDCPA," alleges "this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FDCPA and the FTCA, including the ability to order the disgorgement of ill-gotten monies[,]" citing §§ 13(b) and 19 of the FTCA, and 15 U.S.C. §§ 53(b) and 57b.  (*Id.*, ¶ 65 at 17)

The last count, Count Nine, alleges the intentional tort of Intentional Inflection of Emotional Distress. Plaintiff avers "Defendants intended to file a collection lawsuit against Plaintiff with the knowledge they lacked standing and with the knowledge [ESI] was not a licensed debt collector in the State of Arizona[;] misrepresented to the court that the interest rate was, by contract, eighteen percent (18%) when even the contract on file with the court didn't allow for eighteen percent (18%)[;] obtained a default judgment against Plaintiff and thereafter waited twelve years for the original debt amount of $739.47 to increase to $5080.89[; and] without notice to Plaintiff, garnished Plaintiff's bank accounts at a time when monthly bills would be due the following week." (*Id.*, ¶¶ 67-68 at 17-18) "Defendants at no time had the legal authority to initiate a lawsuit, not to mention the seizure of Plaintiff's money and Defendants continuing collection efforts." (*Id.*, ¶ 68 at 18) "Defendants' conduct, tantamount to an ambush, is so extreme it shocks the conscience and caused and continues to cause plaintiff severe emotional distress in that she feels intimidated, anxious, violated and conducting her day to day life without a bank account because of the two aforementioned subpoenas' served on Plaintiff's bank." (*Id.*, ¶ 68 at 18) Plaintiff further claims that she does not currently have a bank account because she is "fearful that her account will be wiped out again[,]" and "is seeking counseling from her church in the hope that her anxiety would dissipate and not cause additional health problems." (*Id.*, ¶ 69 at 18)

### C. Defendants' Arguments for Dismissal

Defendants move for dismissal of the FAC on numerous grounds: 1) the District Court of Arizona lacks subject matter jurisdiction over Plaintiff's action pursuant to the *Rooker-Feldman* doctrine; 2) Plaintiff's claims for relief fail to state a plausible claim upon which relief can be granted; 3) Plaintiff's causes of action are barred by the applicable statute of limitations; 4) Defendants Vaughan, TRS Financial Corporation, and ESI were not

1   properly served with process, and the action against them should be dismissed because more

2   than 120 days has passed without service since the original Complaint and FAC were filed;

3   5) though denying any violation of Arizona law regarding the regulation of collection

4   agencies,[3] Plaintiff lacks standing to seek injunctive relief that Defendants are violating

5   Arizona law (A.R.S. § 32-1055 - conducting a collection agency without a license). (Doc.

6   22 at 1-15)  Defendants further urge that "[i]f this Court determines that it has subject matter

7   jurisdiction over this de facto appeal from the justice court and dismisses the Complaint for

8   failing to state a claim, it should not grant Plaintiff leave to amend the complaint because

9   'the pleading [cannot] possibly be cured by the allegation of other facts.'" (*Id.,* ¶ 20 at 15)

10  (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (citation omitted)).

11  "In this case, Plaintiff has alleged wrongs that fail as a matter of law and those claims are

12  barred by the statute of limitations." (*Id.*)

13       **D. Plaintiff's Arguments against Dismissal**

14       Except for Counts One and Two, Plaintiff opposes Defendants' dispositive motion.

15  In her Response to Defendants' Motion to Dismiss, she indicates her "[c]laims arise from

16  Defendants' 'Application for Entry of Judgment Against Garnishee' filed on November 7,

17  2012." (Doc. 38 at 2) "As Defendants never validated the debt, the Application for Entry of

18  Judgment as a collection action is a violation of the FDCPA and the Court has subject matter

19  jurisdiction." (*Id.*) According to her Response, which is unsupported by an affidavit or

20  additional copies of public or undisputed documents, "Defendants sat on a judgment for 11

21  years and then garnished Plaintiff's bank account and then subpoenaed the same bank

22  account records twice in a little over two months' time when Defendants discovered Plaintiff

23  retained legal counsel." (*Id.*) Later in her Response, Plaintiff explains that the basis of one

24  of her FDCPA claims is the use of a valid State subpoena which she claims violated federal

25  law. Plaintiff argues that "[t]he very nature of a Subpoena, a summons or any other

26  communication is just that – a communication of information, of facts, of legal principal [sic]

27

28       [3] *See* A.R.S. §§ 32-1001 through 1057.

and orders." (*Id.,* ¶ 10 at 5) (citing *Simon v. FIA Card Services, NA,* 732 F. 3d 259 (3rd Cir. 2013)). Piecing her disjointed arguments together, Plaintiff claims that "[t]he subpoenas issued on November 19, 2012, and February 5, 2013 [are] collection actions [that] violate 15 U.S.C. § 1692g, and 15 U.S.C. § 1692d as intentional acts of harassment and intimidation." (*Id.* at 2)

Citing *Twombly* and Seventh Circuit authority, Plaintiff writes that the FAC "specifically set[s] forth in detail Defendants violations of the FDCPA, equitable and injunctive relief, conversion and intentional infliction of emotional distress." (*Id.* at 4) Plaintiff, however, fails to spell out for the Court the facts alleged to support her conclusory statements that she has alleged sufficient facts in the FAC to establish that a plausible claim on any of Plaintiff's nine causes of action.

Plaintiff's Response concludes that "[w]ith respect to Plaintiff's first and second causes of action, Plaintiff defers to the Court." (Doc. 38 at 8) According to Plaintiff, Count One of the FAC alleges a cause of action for declaratory relief to set aside the State default judgment on Plaintiff's allegation that ESI lacked standing to engage in post-judgment remedies. Count Two is Plaintiff's request for injunctive relief for Defendants' alleged criminal violation of A.R.S. § 32-1055. These are not causes of action, but rather, forms of relief. Because Plaintiff has failed to address Defendants' arguments for dismissal of these so-called causes of action and Plaintiff has not supported these claims with relevant case law or statutory authority, Counts One and Two will be summarily dismissed.

### E. Defendants' Reply to Plaintiff's Arguments against Dismissal

In their Reply, Defendants contend that Plaintiff, for the first time in her Response, raises the claim that Defendants failed to provide her with the FDCPA's "the initial notice of rights," as required by 15 U.S.C. § 1692g,[4] before Defendants filed the State-court action.

---

[4] As more fully discussed herein, under the FDCPA, debt collectors must comply with various statutory notice requirements when first contacting a consumer in connection with the collection of any debt. *See* 15 U.S.C. § 1692g(a). The information must include, among others, "the amount of the debt and name of the creditor and advise that the debt will be

1   (Doc. 40 at 2) (citing doc. 38 at 1-2) Defendants request the Court not consider Plaintiff's

2   "new legal claims raised in response to a motion to dismiss." (*Id.*) *See Pickern v. Pier 1*

3   *Imports (U.S.), Inc*., 457 F.3d 963, 968-69 (9th Cir. 2006) (holding that the complaint did

4   not satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a) because

5   the complaint "gave the [defendants] no notice of the specific factual allegations presented

6   for the first time in [the plaintiff's] opposition to summary judgment"); *Zamani v. Carnes*,

7   491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir.

8   2003) ("The district court need not consider arguments raised for the first time in a reply

9   brief."). Assuming *arguendo* that ESI and Vaughn failed to notify Plaintiff of her FDCPA

10   rights, Defendants argue that this claim was not pled in the FAC that allegedly occurred over

11   twelve years ago and is barred by the FDCPA's one-year statute of limitations, citing 15

12   U.S.C. § 1692k(d). (*Id.*)

13   Referring to Counts One and Two, Defendants contend that "[b]y failing to defend

14   those claims, Plaintiff has implicitly acquiesced in their dismissal." (*Id.* at 5)  Defendants

15   also reiterate that "[t]he Court lacks the 'authority to review the final determinations of a

16   state court in judicial proceedings.'" (*Id.*) (quoting *In re Gruntz*, 202 F.3d 1074, 1078 (9th

17   Cir. 2000) (quotation and citation omitted)). "If Plaintiff wanted the Judgment Against

18   Garnishee set aside, she should have asked the Justice Court for relief. If she could not

19   convince the Justice Court to grant relief, she could have appealed to the Arizona Superior

20   Court." (*Id.*) Thus, this Court should not grant her any relief pursuant to the *Rooker-Feldman*

21   doctrine.

22   Next, Defendants argue that Plaintiff's contention that the two discovery subpoenas

23   issued by the State court to Bank of America in November 2012 and February 2013 are

24   FDCPA "communications" is without merit, distinguishing *Simon v. FIA Card Servs., N.A.*,

25   732 F.3d 259 (3d Cir. 2013), the authority cited by Plaintiff. (*Id.* at 6)  Defendants also point

26   _____

27   assumed valid if the debtor does not dispute its validity within 30 days of the receipt of the
    notice." *Thweatt v. Law Firm of Koglmeier, Dobbins, Smith & Delgado, P.L.C.*, 425

28   F.Supp.2d 1011, 1013 (D. Ariz. 2006)  (citing 15 U.S.C. § 1692g(a)(1)-(3)).

1   out that Plaintiff's argument in her Response "that Defendants' actions as a 'collection
2   agency' violated 15 U.S.C. § 1692e(5)" was a claim also not alleged in the FAC. "Plaintiff
3   cannot amend its Complaint by simply arguing a new legal theory in response to a motion
4   to dismiss. In any event, Plaintiff has misread Arizona law while concluding that Defendants
5   are collection agencies—as defined by Arizona law—when they are not." (*Id.* at 6-7)

6         Finally, Defendants argue that "[t]o have the power to hear the state-law claims, this
7   Court must determine that the federal claim has 'substance sufficient to confer subject matter
8   jurisdiction on the court,' that the state and federal claims 'derive from a common nucleus
9   of operative fact,' and that these claims would 'ordinarily be expected to try them all in one
10  judicial proceeding.'" (*Id.* at 8) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S.
11  715, 725 (1966) (citation omitted)).  According to Defendants, "[w]ithout the barred FDCPA
12  claims, this Court lacks the required federal basis to exercise pendent claim jurisdiction and
13  should dismiss the state-law claims." (*Id.*)

14  **II. Jurisdiction**

15        The FAC alleges the Defendants violated the FDCPA, 15 U.S.C. §§ 1692 *et seq.*
16  Because the FDCPA is a federal statute, Plaintiff's FDCPA claims arise under federal law.
17  *See Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938 (9th Cir. 2009); *Aniel v. TD*
18  *Service Co.*, 2011 WL 109550, at *3 (N.D. Cal. Jan. 13, 2011). Accordingly, unless an
19  abstention doctrine[5] applies to decline the exercise of federal jurisdiction, the District Court
20  of Arizona has subject-matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, and
21  supplemental jurisdiction over Plaintiff's two State-law claims, pursuant to 28 U.S.C. §
22  1367(a). All parties have expressly consented to magistrate-judge jurisdiction pursuant to 28
23  U.S.C. § 636(c). (Doc. 12, 34)

24  **III. Standard of Review**

25

26        [5] *See Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (describing the *Rooker-*
27  *Feldman* doctrine as an "abstention doctrine, under which a party losing in state court is
    barred from seeking what in substance would be appellate review of the state judgment in
28  a United States district court[.]").

1    Federal Rule of Civil Procedure 8(a)(2) requires that each claim in a pleading be

2  supported by "a short and plain statement of the claim showing that the pleader is entitled to

3  relief." Fed.R.Civ.P. 8(a). To meet this requirement, the Supreme Court has held that an

4  "entitlement to relief" requires "more than labels and conclusions . . . Factual allegations

5  must be enough to raise a right to relief above a speculative level." *Bell Atlantic Corp. v.*

6  *Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain "sufficient factual matter,

7  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

8  U.S. 662, 570 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also Moss v. United States*

9  *Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to

10 dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content,

11 must be plausibly suggestive of a claim entitling the plaintiff to relief .") (citing *Twombly* and

12 *Iqbal*). Even where a complaint has the factual elements of a cause of action present, but is

13 factually scattered throughout the complaint and not organized into a "short and plain

14 statement of the claim," it may be dismissed for failure to satisfy Rule 8(a). *Sparling v.*

15 *Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988). A motion to dismiss under Rule

16 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d

17 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

18    Establishing the plausibility of a complaint's allegations is a two-step process that is

19 "context-specific" and "requires the reviewing court to draw on its judicial experience and

20 common sense." *Iqbal*, 556 U.S. at 679; *see also Eclectic Properties East, LLC v. Marcus*

21 *& Millichap Co.*, 751 F.3d 990, 995-96 (9th Cir. 2014). First, a district court should

22 "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the

23 assumption of truth." *Id.* Then, a court should "assume the[ ] veracity" of "well pleaded

24 factual allegations" and "determine whether they plausibly give rise to an entitlement to

25 relief." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's

26 liability, it stops short of the line between possibility and plausibility of entitlement to relief."

27 *Id.* at 678 (citation omitted). When considering plausibility, courts must also consider an

28 "obvious alternative explanation" for the defendant's behavior. *Id.* at 682 (quoting *Twombly*,

1 | 550 U.S. at 567).

2 | **IV. Governing Law**

3 |     **A. Default Judgments**

4 |     In Arizona, "[a] default judgment is treated as an admission, by the defaulting party,

5 | of the truth of all well pleaded facts in the case." *Clugston v. Moore*, 134 Ariz. 205, 206, 655

6 | P.2d 29, 30 (Az. Ct. App. 1982) (citations omitted).  Federal courts follow a similar legal

7 | principle. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). In

8 | Arizona and federal courts, a default judgment has the same claim-preclusive effect as a

9 | judgment on the merits. *See Rebuild America, Inc. v. Golden Raven, Inc.*, 2010 WL 1428701,

10 | at *3 (Az. Ct. App. April 9, 2010) ("In the context of claim preclusion, a 'judgment on the

11 | merits' includes a default judgment.") (citation omitted); *In re Garcia*, 313 B.R. 307, 312 n.

12 | 10 (9th Cir. Cir. 2004) (quoting 18A Wright, Miller & Cooper, *Federal Practice and*

13 | *Procedure*: *Jurisdiction* 2d § 4442) ("Valid default judgments establish claim and defense

14 | preclusion in the same way as litigated judgments, and are equally entitled to enforcement

15 | in other jurisdictions); *Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 270 (1st Cir. 1996).

16 | In fact, "[t]he Supreme Court has ruled that a federal court must give a state court judgment

17 | 'the same preclusive effect as would be given that judgment under the law of the State in

18 | which the judgment is rendered.'" *Dixon v. Falcon Heights Condominium Ass'n*, 2013 WL

19 | 6189965, at *3 (D. Or. Nov. 26, 2013) (quoting *Migra v. Warren City School Dist. Bd. of*

20 | *Educ.*, 465 U.S. 75, 81 (1984) (citation omitted)). " Federal courts apply state preclusion law

21 | in determining whether claim preclusion applies." *Id.* (citing *Marrese v. Am. Acad. of*

22 | *Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985)).

23 |     **B. The *Rooker-Feldman* Doctrine**

24 |     The *Rooker-Feldman* doctrine is a well-established jurisdictional rule, prohibiting

25 | federal courts from exercising appellate review over final state-court judgments. *See*

26 | *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007). "At its core, the *Rooker-*

27 | *Feldman* doctrine stands for the unremarkable proposition that federal district courts are

28 | courts of original, not appellate, jurisdiction." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir.

2000) (*en banc*) (citing 28 U.S.C. §§ 1331, 1332). "Thus, it follows that federal district courts have no authority to review the final determinations of a state court in judicial proceedings." (*Id.*) (citation and internal quotations omitted). The *Rooker-Feldman* doctrine[6] prohibits federal courts from exercising subject matter jurisdiction over suits "[b]rought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)), *aff'd in part, vac'd in part on different grounds by Lance v. Coffman*, 549 U.S. 437 (2007); *see also Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994) (*Rooker–Feldman* doctrine applies only when the federal plaintiff was a party to the state case and is challenging an adverse decision by the state court). "The basic premise of *Rooker-Feldman* is that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court.'" *Maldonado v. Harris*, 370 F.3d 945, 949 (9th Cir. 2004) (quoting *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003)). "*Rooker-Feldman* recognizes the implicit statutory structure established by Congress, which has determined that the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts." *Id*. Thus, "[d]irect federal appellate review of state court decisions must occur, if at all, in the Supreme Court." *In re Gruntz*, 202 F.3d at 1078 (citing 28 U.S.C. § 1257).

"If a federal plaintiff has brought a de facto appeal from a state court decision - alleging legal error by the state court and seeking relief from the state court's judgment - he or she is barred by *Rooker-Feldman*." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th

---

[6] The doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. *See* 263 U.S. at 415-16. *Feldman* held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. *See* 460 U.S. at 486-87.

Cir. 2004) (citation omitted). "The federal plaintiff is also barred from litigating, in a suit that contains a forbidden de facto appeal, any issues that are 'inextricably intertwined' with issues in that de facto appeal." *Id*. (citing *Noel*, 341 F.3d at 1155) (internal quotation marks omitted); *see also Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The inextricably intertwined test thus allows courts to dismiss claims closely related to claims that are themselves barred under *Rooker-Feldman*." *Id*.

"In assessing whether the *Rooker-Feldman* doctrine applies, 'the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.'" *Normandeau v. City of Phoenix*, 516 F.Supp.2d 1054, 1063 (D. Ariz. 2005) (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). "If the injury alleged resulted from the state court judgment itself, the *Rooker-Feldman* doctrine dictates that the federal courts lack subject matter jurisdiction, even if the state court judgment was erroneous or unconstitutional." *Id*. (citation omitted). "By contrast, if the alleged injury is distinct from the state court judgment and not inextricably intertwined with it, the *Rooker-Feldman* doctrine does not apply[.]" (*Id*.) Federal courts have held that a federal "suit seeking damages for the execution of a judicial order is just a way to contest the order itself, [therefore] the *Rooker-Feldman* doctrine is in play." *See*, *e.g.*, *Busch v. Torres*, 905 F.Supp. 766, 770 (C.D. Cal. 1995) (quoting *Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995)); *Pinzon v. Jensen*, 2009 WL 4134809, at *5 (E.D. Cal. Nov. 23, 2009) ("[P]laintiff appears to be asserting that the small claims judgment caused Plaintiff injury. These are the kinds of claims the court lacks jurisdiction to hear under the *Rooker-Feldman* doctrine.").

"Determining what constitutes a forbidden de facto appeal, however, has sometimes proven difficult for the lower courts." *Kougasian*, 359 F.3d at 1142 (citing *Noel*, 341 F.3d at 1161-62 (collecting cases)). In analyzing the applicability of the *Rooker-Feldman* doctrine, a federal court "pay[s] close attention to the relief sought by the federal court plaintiff," as the doctrine precludes the adjudication of a federal claim that seeks to undo a prior state court judgment. *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) (citation omitted).

Numerous district courts in the Ninth Circuit have rejected FDCPA claims in a federal action on the basis of the *Rooker-Feldman* doctrine. *See, e.g., Fleming v. Gordon & Wong Law Group*, P.C., 723 F.Supp.2d 1219 (N.D. Cal. 2010); *Brooks v. Vinci*, 2010 WL 3607778, at *3 (D. Or. July 29, 2010) ("Brooks's 'wrong venue' and improper service claims cannot be separated from the question of the validity of the Colorado court's judgment. In other words, his FDCPA claims are a collateral attack on the judgment itself, forbidden by *Rooker-Feldman*."), *report and recommendation adopted by, Brooks v. Vinci*, 2010 WL 3606616 (D.Or. Sept. 9, 2010).

### C. The Fair Debt Collection Practices Act

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Randall v. Nelson & Kennard*, 2010 WL 3636258, at *1 (D. Ariz. Sept. 20, 2010). The FDCPA does not protect every imaginable debt; instead, it is limited to consumer debts, specifically, "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

The FDCPA was designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists. *Baker v. G.C. Servs. Corp*., 677 F.2d 775, 777 (9th Cir. 1982). It is a strict liability statute, meaning that a consumer need not show that the debt collector intentionally, fraudulently, or knowingly violated the Act. *See Reichert v. National Credit Systems, Inc*. 531 F.3d 1002, 1004 (9th Cir. 2008) ("[O]ur court decided [*Clark v. Capital Credit & Collection Servs., Inc*., 460 F.3d 1162 (9th Cir. 2006)], which made clear that the FDCPA is a strict liability statute in that a plaintiff need not prove an error was intentional.").

It is well settled that FDCPA liability is limited to individuals or entities who meet the

1   FDCPA's definition of "debt collector." *See*, *e.g.*, *Pollice v. Nat'l Tax Funding LP*, 225 F.3d

2   379, 403 (3d Cir. 2000) ("The FDCPA's provisions generally apply only to 'debt collectors.'

3   . . . Creditors - as opposed to 'debt collectors' - generally are not subject to the FDCPA.");

4   *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996) (finding that the

5   liability for a debt collector should not be vicariously imposed on the assignee who was not

6   a debt collector under the FDCPA); *see also Miranda v. Field Asset Services*, 2013 WL

7   124047, at *4 (S.D. Cal. Jan. 9, 2013); *Plumb v. Barclays Bank Delaware*, 2012 WL

8   2046506, at *4 (E.D. Wash. June 5, 2012) ("[E]ven vicarious liability under the FDCPA has

9   been restricted to principals who themselves are statutory 'debt collectors.'"); *Oei v. N. Star*

10  *Capital Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006). The FDCPA

11  defines "debt collector" as "any person who . . . in any business the principal purpose of

12  which is the collection of any debts, or who regularly collects or attempts to collect, directly

13  or indirectly, *debts owed or due or asserted to be owed or due another*. . . ." 15 U.S.C. §

14  1692a(6) (emphasis added). For purposes of Defendants' motion, Plaintiff has alleged

15  sufficient facts in the FAC that ESI and Vaughn are debt collectors within the meaning of the

16  FDCPA.

17          Under the FDCPA, a debt collector's "initial communication" with a consumer must

18  provide the disclosures set forth in 15 U.S.C. § 1692g(a). *See Hernandez v. Williams*, *Zinman*

19  *& Parham, P.C.*, 2014 WL 977649, at *3 (D. Ariz. March 13, 2014) (citing *Voris v.*

20  *Resurgent Capital Servs., L.P.*, 494 F.Supp.2d 1156, 1169, 2007 (S.D. Cal. 2007)). These

21  disclosures are otherwise known as a "debt validation notice." *Id.* "The purpose of the debt

22  validation notice is to inform a debtor of her rights and obligations to the creditor." *Id.*

23  Congress amended 15 U.S.C. § 1692g in 2006, adding the provision that "[a] communication

24  in the form of a formal pleading in a civil action shall not be treated as an initial

25  communication for purposes of subsection (a)." *Tourgeman v. Collins Financial Services,*

26  *Inc.*, 2009 WL 6527757, at *3 (S.D. Cal. Aug. 6, 2009) (citing 15 U.S.C. § 1692g(d)

27  (dismissing plaintiff's claim that the state court collection action violated the FDCPA as an

28  initial communication).

The FDCPA authorizes "[a]n action to enforce any liability created" by the FDCPA in "any appropriate United States District Court . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Naas v. Stolman*, 130 F.3d 892 (9th Cir. 1997) (statute of limitations on FDCPA action arising from state-court debt collection suit began to run on date suit was filed). "The only exception to this rule under Ninth Circuit case law arises when a party is not properly served, in which case the relevant date is the date the plaintiff discovered or could have discovered her cause of action." *Baker v. Midland Funding LLC*, 2014 WL 345686, at *1 (D. Ariz. Jan. 30, 2014) (citing *Mangum v. Action Collection Serv., Inc*., 575 F.3d 935, 940 (9th Cir. 2009); *but see Lyons v. Michael & Assocs.*, 2013 WL 4680179, at *2 (S.D. Cal. Aug. 28, 2013) (citing *Mangum* and indicating that "in 2009, the Ninth Circuit, without citing *Naas*, held that the relevant date in FDCPA actions is the date the plaintiff discovered or could have discovered her cause of action."). The District Judge in *Baker* found the Eastern District of California's explanation persuasive:

> [N]aas only applies to cases where there is no question that the defendant was properly named and served in the underlying collection action. In such cases, the statute of limitations should ordinarily begin to run upon the action's filing. But where the defendant does not receive proper notice in the course of litigation, then, per *Mangum*, the statute of limitations begins to run when the plaintiff "knows or has reason to know" of the FDCPA violation.

*Baker*, 2014 WL 345686, at *1-2 (quoting *Huy Thanh Vo v. Nelson & Kennard*, 931 F.Supp.2d 1080, 1086 (E.D. Cal. 2013)).

**D. Conversion**

Under Arizona law, conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 208 Ariz. 140, 91 P.3d 362, 365 (Az. Ct. App. 2004) (citation omitted); *see also Focal Point, Inc. v. U–Haul Co. of Ariz., Inc*., 155 Ariz. 318, 319, 746 P.2d 488, 489 (Az. Ct. App. 1986) (conversion is defined as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.") (citation and internal quotation marks omitted)); *Autoville, Inc. v. Friedman*, 20 Ariz. App. 89, 510 P.2d 400, 402 (Az. Ct. App. 1973) ("The gravamen of [conversion] is . . . the wrongful

interference with another's ownership or right of possession.") (citations omitted). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Case Corp.*, 91 P.3d at 365; *Empire Fire & Marine Ins. Co. v. First Nat. Bank*, 26 Ariz.App. 157, 159, 546 P.2d 1166, 1168 (Az. Ct. App. 1976) ("In order to maintain an action for conversion the plaintiff must show that at the time of the conversion he was in possession of the property or was entitled to the immediate possession thereof."). "While a conversion claim cannot be maintained to collect on a debt that could be satisfied by money generally, *Autoville*, money can be the subject of a conversion claim if the money can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Id.*, 91 P.3d at 365. "The proper plaintiff in a conversion action is one 'who had the right to immediate possession of the chattel at the time of the alleged conversion.'" *Universal Mktg. & Entm't, Inc. v. Bank One of Arizona*, 203 Ariz. 266, 53 P.3d 191 (Az. Ct. App. 2002) (quoting *Sears Consumer Fin. Corp. v. Thunderbird Prods.*, 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (Az. Ct. App. 1990) (citations omitted)).

### E. Intentional Infliction of Emotional Distress

An IIED claim, known as the "tort of outrage," requires proof of three elements: "first, the conduct of the defendant must be extreme and outrageous; second, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and third, severe emotional distress must indeed occur as a result of defendant's conduct." *Citizen Publishing Co. v. Miller*, 210 Ariz. 513, 516, 115 P.3d 107, 110 (Ariz. 2005) (citing *Ford v. Revlon*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (Ariz. 1987) (upholding jury verdict for the plaintiff where defendant employer's failure to address plaintiff's repeated complaints of physical assault and sexual harassment led plaintiff to attempt suicide) (citing *Restatement (Second) of Torts* § 46 (1965)).

Under the first element, a plaintiff "may recover for [IIED] only where the defendant's acts are 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a

1   civilized community.'" *Patton v. First Fed. Sav. & Loan Ass'n of Phoenix*, 578 P.2d 152,

2   155 (Ariz. 1978) (quoting *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 460 P.2d 666, 668

3   (Az. Ct. App. 1969), *overruled on other grounds*, *Godbehere v. Phoenix Newspapers, Inc.*,

4   162 Ariz. 335, 783 P.2d 781, 784 (Ariz. 1989)); *see also Ford*, 153 Ariz. at 43, 734 P.2d at

5   585 (Ariz. 1987). When a claim of IIED is made, "[t]he court in the first instance must

6   determine whether the acts complained of can be considered extreme and outrageous so as

7   to state a claim for relief." *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 177, 745

8   P.2d 617, 625 (Az. Ct. App. 1987)).

9        In Arizona, "conduct necessary to sustain an [IIED] claim falls at the very extreme

10  edge of possible conduct." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 258, 619 P.2d

11  1032, 1035 (Ariz. 1980) (upholding directed verdict where the defendant nursing home failed

12  to notify the plaintiff that her husband was terminally ill).  An IIED "claim cannot arise out

13  of conduct which merely hurts one's feelings." *Cluff*, 10 Ariz.App. at 562, 460 P.2d at 668.

14  "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of

15  'atrocious' and 'beyond all possible bounds of decency' that would cause an average member

16  of the community to believe it is 'outrageous.'" *Nelson v. Phoenix Resort Corp.*, 181 Ariz.

17  188, 199, 888 P.2d 1375, 1386 (Az. Ct. App. 1994); *Lucchesi v. Frederic N. Stimmel, M.D.*,

18  149 Ariz. 76, 716 P.2d 1013 (Ariz. 1986). "Generally, [an IIED claim] is one in which the

19  recitation of facts to an average member of the community would arouse his [or her]

20  resentment against the actor, and lead him [or her] to exclaim 'Outrageous!'" *Cluff*, 10 Ariz.

21  App. at 562, 460 P.2d at 668 (citing *Restatement (Second) Torts* Section 46, comment (d)

22  (1965) (internal quotation marks omitted).

23       A plaintiff bears the burden of proving that a defendant's conduct was extreme and

24  outrageous and caused plaintiff severe emotional distress; however, in Arizona, a physical

25  injury need not occur. *Pankratz v. Willis*, 155 Ariz. 8, 744 P.2d 1182 (Az. Ct. App. 1987);

26  *Nelson*, 181 Ariz. at 199, 888 P.2d at 1386.

27

28  **V. Discussion**

1      Here, this 2013 federal lawsuit and the 2001 State-court judgment are "inextricably

2  intertwined" because Defendants use of post-judgment proceedings were, and are, authorized

3  by Arizona law after judgment was entered against Plaintiff. For example, the FAC seeks

4  judgment against Defendants ESI and Vaughan because they purportedly were not proper

5  parties in the State-court action, which allegedly rendered the State-court judgment against

6  Plaintiff void *ab initio*; and that damages be awarded Plaintiff for Defendants' violations of

7  multiple parts of the FDCPA and commission of the torts of Conversion and the IIED. To

8  disregard the validity of the State-court judgment solely on Plaintiff's allegations would

9  constitute a collateral attack on the validity of the Arizona judgment. *See Clugston*, 134 Ariz.

10  at 206, 655 P.2d at 30 ("[a] default judgment is treated as an admission, by the defaulting

11  party, of the truth of all well pleaded facts in the case."). Plaintiff has not attempted to

12  distinguish her FDCPA claims as independent of the State-court judgment, but rather, her

13  FDCPA allegations challenge the merits of the State-court judgment itself. Plaintiff's

14  allegations invite the Court to find that Defendants did not have standing to bring and

15  prosecute the State-court action. This District Court declines Plaintiff's invitation. *See Dixon*,

16  2013 WL 6189965, at *3 ("[t]he Supreme Court has ruled that a federal court must give a

17  state court judgment 'the same preclusive effect as would be given that judgment under the

18  law of the State in which the judgment is rendered.'") (citation omitted).

19      The Court finds that because Plaintiff's FDCPA claims constitute a *de facto* appeal

20  challenging the validity of the State-court judgment are inextricably intertwined with the

21  State-court judgment, and Defendants' use of procedurally and statutorily authorized

22  post-judgment remedies under Arizona law, the claims are barred by the *Rooker-Feldman*

23  doctrine. Absent sufficient factual allegations to support Defendants' misconduct

24  independent of the State-court judgment, merely alleging the elements of a FDCPA claim

25  does not satisfy Plaintiff's minimum pleading requirements under federal law. *See Twombly*,

26  550 U.S. at 555 ("a formulistic recitation of the elements of a claim will not do" to state a

27  claim).

28      Even if the *Rooker-Feldman* doctrine did not apply to some of Plaintiff's causes of

action, they are nevertheless time-barred by the relevant statute of limitations. Plaintiff fails to even address Defendants' arguments that Plaintiff's FDCPA claims are barred by FDCPA's statute of limitation, much less argue the statute was tolled until she "discovered" the alleged violations or were otherwise equitably tolled. Regardless whether the FDCPA limitations period began to run upon filing the State-court complaint or upon its subsequent service on Plaintiff on August 13, 2001, under either date, the statute of limitations began to run in 2001. Plaintiff's FDCPA claims predicated on conduct before October 28, 2012, are clearly untimely and time-barred by FDCPA's one-year statute of limitation.

Assuming *arguendo* Defendants violated the FDCPA initial-communications requirement mandated by § 1692g, the FAC did not allege a cause of action for such a violation. Moreover, Plaintiff has not requested leave to amend the FAC to allege a § 1692g violation, nor has she provided the Court with any evidence that Defendants did not comply with § 1692g. No doubt, such an amendment now, over 12 years since the State-court action was filed and served, would be futile to state a plausible claim because it would be barred by the FDCPA's one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

Plaintiff submits no declaration contesting the factual record; nevertheless, she argues Defendants violated the FDCPA because subsequent debt collectors must comply with the FDCPA's initial communication requirements. As a matter of law, even assuming a subpoena does constitutes a "pleading" within the meaning of § 1692g(a), an issue not addressed herein, the Court finds that 15 U.S.C. § 1692g(a)'s statutory requirements do not apply to Defendants' November 2012 and February 2013 subpoenas served upon Bank of America because neither was an "initial" communication on Plaintiff's debt. Under the FDCPA, it is "the" initial communication with the consumer that triggers the mandatory debt validation notice requirements. *See* 15 U.S.C. § 1692g(a) ("Within five days after *the* initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing [certain listed requirements] . . . .") (emphasis added). *See Hernandez*, 2014 WL 977649, at * 3; *Paris v.*

1  *Steinberg & Steinberg*, 828 F.Supp.2d 1212, 1222 (W.D. Wash. 2011) (in drafting § 1692g,

2  "Congress contemplated only one initial communication with a debtor on a given debt").

3  Having failed to plead facts moving this claim from the conceivable to the plausible,

4  Plaintiff's FDCPA claim for violation of § 1692g(a)(4) fails to state a claim upon which

5  relief can be granted, and will dismissed pursuant to Rule 12(b)(6).

6      Similarly, the FAC also fails to state a plausible claim for Conversion and IIED.

7  Treating the State-court judgment as a valid judgment, as the Court must, Arizona law

8  authorizes a plaintiff to obtain a default judgment after valid service of process and the

9  failure to answer, garnish a defaulted party's bank accounts, and obtain post-judgment

10 discovery of a defaulted party's assets via the power of subpoena as Defendants did in the

11 State-court action. *See* Rule 55, Ariz.R.Civ.P; A.R.S. §§ 12-1570.01, -1572 , -1574; *Frazer,*

12 *Ryan, Goldberg, Keyt & Lawless v. Smith*, 184 Ariz. 181, 186, 907 P.2d 1384, 1389 (Az. Ct.

13 App. 1995) ("In summary, the earnings protection of §§ 33-1131 and 12-1598.10 does not

14 extend to monies disbursed to the debtor's bank account."); *National Union Fire Ins. Co. of*

15 *Pittsburgh, PA v. Excel Staffing*, 2011 WL 31192, at *2 (D. Ariz. Jan. 5, 2011) ("[The

16 judgment creditor] may use the discovery devices provided in Civil Rules 26 to 37 or may

17 obtain discovery in the manner provided by the practice of the state in which the district is

18 held.") (quoting 12 Wright, Miller & Marcus, *Federal Practice and Procedure*, § 3014 (2d

19 ed. 1997)).

20     Plaintiff's FAC also fails to state a plausible Conversion claim under Arizona law on

21 another ground. The FAC fails to allege that Garnishee Bank of America, possessor of the

22 money at the time the garnishment writ was served, had an obligation to treat the funds in

23 Plaintiff's accounts in a specific manner, or even that the Bank had an contractual obligation

24 to pay Plaintiff, as required to state a Conversion claim under Arizona law. *See Cellco P'ship*

25 *v. Hope*, 2012 WL 260032, at *18 (D. Ariz. Jan. 30, 2012) (citing *Universal Mktg.*, 203 Ariz.

26 at 268, 53 P.3d at 193; *Case Corp.*, 208 Ariz. 140, 91 P.3d 362, 366-68. At the time of the

27 alleged conversion in this case, the entity with the immediate right to possession of the

28 money was not Plaintiff, but Bank of America. In making her deposits, Plaintiff made the

funds the property of Bank of America, giving rise to a debt Bank of America owed to Plaintiff. *See Universal Mktg.,* 203 Ariz. at 268, 53 P.3d at 193.

The FAC also fails to state a plausible claim for Intentional infliction of Emotional Distress, which requires a showing of extreme and outrageous conduct. *See Ford*, 153 Ariz. at 42, 734 P.2d at 580. The facts alleged in the FAC are insufficient to meet this burden. Assuming a valid State-court judgment, as the Court must, it is not extreme and outrageous conduct for a judgment-creditor to file a collection lawsuit against Plaintiff, a debtor, on an unpaid debt, garnish this judgment-debtor's bank account, twice renewing the judgment as authorized by Arizona law, or subpoenaing this judgment-debtor's bank records as authorized by Arizona's discovery rules.

**VI. Conclusion**

The Court finds that consideration of Plaintiff's causes of action is barred by the *Rooker-Feldman* doctrine; the First Amended Complaint fails to state a plausible claim upon which relief can be granted; and, because it is clear to the Court that the First Amended Complaint cannot possibly be cured by the allegation of other facts, this action will be dismissed with prejudice.

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Dismiss the Complaint, doc. 22, is **GRANTED**, and hereby dismissing this action with prejudice. The Clerk of Court is kindly directed to terminate this action in its entirety.

Dated this 2nd day of September, 2014.

Lawrence O. Anderson
United States Magistrate Judge